MARY J. G. BAINES, by her next friend *vs.* JAMES G. M'GEE and
wife et al.

The purchase of property, by an administrator, at his own sale, is viodable ; but
whether absolutely void or not, query ?

The case of *J. & J. Cable*, v. *Martin & Bell*, 1 How. 558, cited and confirmed.

A sale by an administrator, unless for the purpose of paying debts, or to enable
him to make distribution, is absolutely void.

A private sale by an administrator, who had intermarried with the widow of his
intestate, of property belonging to the estate, passes only the right the husband
acquired by marriage, and does not affect the right of distributees.

In such case, the vendee of the administrator, with notice, would be compelled to
yield the property purchased to the right of the distributees. But if a purchaser
without notice, query ?

A court of chancery has jurisdiction in such case to enforce the right of the distri-
butees—the court of probate not being able to grant adequate relief from the
character of the parties.

*Sed aliter :* If the administrator were the only party.

If the purchase by an administrator, at his own sale, be valid, the statutory lien
would still exist on the property in his hands, to secure the purchase money,
and could be enforced by those in interest entitled to the money.

Nor would payment to the administrator, by his vendee, in case of a sale made
by him, after his own purchase, necessarily discharge that lien ; payment to the
estate was the only thing that could have discharged that mortgage.

Where a demurrer and answer are both filed to a bill in chancery, the answer
overrules the demurrer.

A bill framed with a two-fold aspect, either to procure a specific delivery of
property, or to enfore a supposed lien upon it, is not demurrable for duplicity.

THIS cause is brought by appeal and consent of the parties,
directly to this court, from the decision of the vice chancellor,
sitting in the district chancery court at Carrollton.

The following is an abstract of the facts of the case :

The complainants' (by her next friend, Thomas Rule) bill,
though returnable to the superior court of chancery, at Jackson,
was, by consent, transferred to Carrollton, where it was filed at
the June term, 1842. The bill states that George S. Baines,
the father of the complainant, departed this life about the — day
of ———, intestate, leaving the complainant, his only child, and

her mother, the defendant, Mary Ann McGee, his widow; that he left a considerable estate, both personal and real; that the defendant, Mary Ann, administered upon his estate, and intermarried with the defendant, James G. McGee, who, in her right, became administrator of said estate; that in that capacity the whole of the estate of George S. Baines came to his hands, and that, as such administrator, he sold the personal property at public auction, at which sale he became the purchaser himself of the negro man, Joshua, in the bill mentioned, at the price of $1601; that after the sale, he claimed said negro by virtue of his purchase, and subsequently sold him to the defendant, Matthews, who claimed him as his own. The bill further states that McGee failed to pay for said negro, and that himself and wife had wasted the whole of the balance of said estate, and were insolvent, and that the complainant had no means of procuring any part of the estate but by being permitted to enforce the statutory mortgage in favor of minors, &c. She also states that she is advised that the purchase of said negro, at his own sale, by the administrator, is void, and prays that he may be subjected to the statutory lien in her favor; and that said McGee and wife render an account of their actings and doings in said estate, &c. The bill prayed for a restraining order, which was granted.

The bill was drawn, sworn to, and the fiat granted in the month of February, 1842; but before the bill was filed, Albert Ford purchased the negro from Matthews, and by agreement, he was, at the June term of the district chancery court, made a defendant, with leave to answer and defend.

Whereupon he filed a demurrer to the bill, which was, so far as the record shows, not disposed of in any way. Before the December term of the court, however, he filed an answer. In his answer he admits the death of George S. Baines—that the complainant is his child—that the defendants, McGee and wife, are administrator and administratrix of his estate, and that as such, the estate of their intestate came into their hands—that the negro mentioned in the bill was a part thereof, and that he was sold, as stated, and purchased by the defendant, McGee,

and by him sold to Mathews, who again sold him to the defendant, Ford.

The answer sets forth that Baines, the intestate, had four negroes at the time of his death, and some small amount of other personal property—that the defendants, McGee and wife, are entitled to one-half of the personal estate of said decedent—and that the complainant has now one of said negroes in the possession of her *prochein ami* and guardian—and that she is suing for another in Tennessee—and that McGee and wife had transferred to her all their right to the real estate of said decedent—and that the negro in contest would not be more than their equal share of said estate—and also that he had paid Matthews for said negro, who had long before paid McGee for him.

The defendant took the deposition of Everet S. Ford, who proved that, in addition to the property mentioned in said answer, he had paid to said McGee, as administrator of said estate, the sum of $2100, and that although he had been intimate with said complainant ever since her birth, he did not know that she ever had the possession, use, or control of either money or property belonging to said estate, except the negro man, now in the possession of her guardian, and that McGee and wife were still renting the real estate of said decedent.

At the calling of the cause, the bill was taken for confessed against McGee and wife, and Matthews, and set down for hearing by the defendant, Ford, upon the bill, answer, and proof, and upon the hearing, the court ordered and decreed, that the complainant's bill be dismissed with costs, &c.

*Landsdale*, for appellant.

It is contended by the complainant, that the defendant, Ford, by answering, waives the demurrer, both in the court below and in this court; and that this cause is to be settled by the proof upon the issues, or rather upon the facts stated by him in his answer alone. Tested by this rule, it would be an insult to common sense to argue this cause. The only witness sworn, unqualifiedly disproves the whole substance of the answer. In addition to which, it will be remembered that the cause was set

Baines *v.* McGee.

down for hearing by the defendant himself, in the attitude it then stood after the taking the bill, as confessed against his co-defendant under whom he claims; and he is bound by the pro-confesso as much as if every statement in the bill was proven. See 6 Cranch. 24, &c., *Stamps* v. *Fitch*, decided at the last term of this court, but not yet reported. (This case will be found in 6 How. Rep. 487.) Then recur to those facts for one moment, and supposing the negro still to be in the possession of McGee and wife, and what would be the decree? It is alledged that they administered—that the whole estate came to their hands—that they sold—that McGee purchased the negro in contest, and never paid one cent for him—that himself and wife have wasted the whole of the balance of the estate, and are insolvent; and all these facts, it is again stated, are confessed. Can the defendant, Ford, who claims under them, be in a better situation than they would be? But it is insisted that the court decided correctly in overruling the defendant's demurrer.

By the laws of this State, an administrator can neither take the estate of his intestate at its appraised value, nor sell it at private sale. Then if he is at all permitted to purchase at his own sale, it must be as other bidders, and not in his character of administrator; and the property purchased by him is as much liable for the purchase money, as that purchased by other people. The law was made for the protection of minors, and those interested as creditors and distributees, and not for the administrator. See How. and Hutch. Dig. p. 417, § 110. In whose favor, then, is the negro liable? Why, in favor of the heir who has, as in this case, no other means of redress.

But it is insisted by the defendant's counsel, that Matthews paid McGee for the negro. To that it may be answered, first, that if his purchase was at private sale from McGee as administrator, that the purchase is absolutely void, and that no title under such purchase can pass; and, by consequence, that the heir, under the facts stated and admitted, is entitled to have the negro. If, on the other hand, McGee's purchase was *prima facie* good, then he sold him as his own property, and received

pay in that capacity.   It cannot be pretended that a purchase of property from McGee in his private character, and payment to him in the same character, could be held as a payment to him as administrator, and release the property from the operation of the mortgage lien.

Matthews dealt with him as a private person selling his own property.

But Ford, who is the uncle of the infant complainant, contends that, as to her, it shall be held to be a *bona fide* sale and payment to McGee as administrator, and thereby drive her to seek redress upon an insolvent and worthless bond, while he, her uncle, who purchased after he knew her suit was in progress, is to be permitted to retain the property, descended to her from her father.

But it is further contended by the occupant's counsel, and decided by the court below, that this is properly a case for the jurisdiction of the probate court.   This the appellant denies, and insists that there is no statement in the bill which would give that court jurisdiction—and the whole object of the bill is to subject the negro to the mortgage in favor of the complainant; to do which, it was necessary that she should state that the defendants, McGee and wife, had no interest whatever in the slave, by reason of their waste of the balance of the estate, &c.

If they had answered, denying that fact, then the complainant asked that they be compelled to account, as administrators; so that the validity of the sale made by them might be tested.

But however the question of jurisdiction may have been at first, it is insisted that the defendant, by answering, has entirely waived the objections.

The principle is well settled, that if a defendant answer a bill, though it would have been demurrable upon the ground that a court of law could have given ample redress, yet that he cannot insist upon that matter, upon the final hearing.   Surely, he cannot be placed in a better attitude, by demurring first, having his demurrer overruled—submitting to the decision of of the court, and then answering—than by having answered at

first.   It is confidently believed that the decree of the court be-
low, is against law and conscience, and ought to be reversed—
which is respectfully asked.

*Brooke,* for appellee.

The bill in this case was demurred to at the June term, 1842,
of the court below.  The overruling of this demurrer is the only
error the vice chancellor has committed; but for this, he has
made ample amends by dismissing the bill on final hearing.  As
this court, however, will look into the whole record, it will be
proper to bring forward the questions presented by the demurrer,
as well as those raised by the whole answer and evidence.  The
bill presents two grounds of relief; first, it seeks to subject the
negro to the statutory mortgage given on property, sold at com-
missioner's sales; and, second, seeks to avoid said sale as a
nullity, because the property was purchased, by the administra-
tor, at his own sale.  First, of the statutory mortgage : it is
contended, under the demurrer, that the complainant is not the
proper person to enforce such a lien ; the right, in such cases,
vests solely in the administrator.   In him is the legal interest
in the notes given for property sold by him in his official ca-
pacity.   The statutory lien is an additional security given by
law to such notes ; and, as the administrator alone can sue on
the debt or notes, he alone can enforce the lien.   They cannot
be severed; unless, therefore, the complainant, as distributee,
would have a right to bring a suit for the debt, which the lien
is intended to secure—she has no right to bring a suit to enforce
the lien itself.   If the administrator has, by his acts, disquali-
fied himself from bringing suit or enforcing his lien, he is liable
on his bond, to the parties interested.   There is no allegation in
the bill that his bond is not good.   It is obvious, that if the
purchaser at an administrator's sale pay for the property, and
the money is wasted or misapplied by the administrator, that
the lien is gone.   The purchaser is not bound, in such case, to
see to the application of the purchase money.   In this case, it
seems, the administrator became the purchaser at his own sale,
and sold the property so purchased to defendant, Matthews.   It

is not suggested in the bill that Matthews did not pay the administrator; it seems to be admitted that he did. The administrator, then, has received the purchase money, and he alone can be called to an account for it. Can a distinction be drawn here, between the administrator and the man? Or, rather, will not what he received from Matthews as his own, be charged to him as administrator, and he, as such, be made responsible for it? The court will recollect that there is no allegation in the bill that the securities of McGee and wife, as administrators, are insolvent. Against them lies the complainant's remedy. ·

Though the complainant, for the purpose of obtaining the benefit of the statutory lien or mortgage, seems in the first part of her bill to consider the sale as a valid one, yet she subsequently changes her ground, and seeks to have it regarded as a nullity, because, forsooth, the administrator had no right to purchase at his own sale. Will not such inconsistencies as this vitiate the bill? Can a complainant be thus heard to blow hot and cold with the same breath? But it is denied that purchases, by administrators or executors or other trustees, are *ipso facto* void. They are only voidable for the purposes of justice, and for such purposes alone can be set aside.

Whether the purposes of justice would be attained by setting aside this sale, and wrenching the property from an innocent purchaser for valuable consideration, the court can judge. Another objection to the bill on demurrer, is, that it is multifarious. It seeks not only, as a specific object, to recover the negro in controversy, but seeks, also, an account of the actings and doings of the administrators. An account, if the court of chancery had power to grant it, is a matter totally distinct from the recovery sought, and not necessary thereto. If complainant stands in need of an account at the hands of the administrator, it should be the subject matter of a bill; the relief to be granted being wholly different from, and unconnected with the former. See Story's Eq. pl. 224, and n. 2. The demurrer to the bill, therefore, should have been sustained.

But, on the answer and proof, it is clear that the chancery court could not have given the relief sought for. The answer

alledges that the wife of the administrator is the mother of the complainant, and entitled to an equal portion of the estate of her former husband; that her marriage with her present husband, the administrator, in right of his wife whose sale is complained of, took place in 1837, prior to the passage of the woman's law. It further alledges that the complainant has received as much of said estate as her mother. It is shown by the deposition read on the hearing, that the property of the estate, coming into the hands of the present administrators, consisted of four negroes and about $2100 in money—what became of the money is not shown. It must be presumed, therefore, that it was disbursed in the course of administration, as all officers are presumed to have done their duty according to law until the contrary be shown. Of the negroes, it is shown that three were sold by the administrator at public sale—one is now in the possession of the complainant—one was purchased by Arthur Hays—and one is the negro in controversy. There is no proof as to the fourth, except the allegation in the bill that complainant, by her guardian, has brought a suit for her in Tennessee. As for them, as the proof goes as to distribution, (considering that McGee had a right to dispose of his wife's portion,) the property has been pretty equally divided. The remainder, concerning which there is no proof, must be presumed to have been disposed of legally, in due course of administration, as the court could not by implication convict the administrator of a devastavit. If on such a state of facts the chancellor should undertake to decree the negro in question to one or the other of the distributees, would it not be assuming the power of distribution? a power that belongs exclusively to the court of probates? Even if it had the power, could it, on the case presented, have done justice between the parties? Could the chancellor, on the facts presented by the papers, have decided that Mrs. McGee had received more than her share of her former husband's estate, and that the negro, in question of right, belonged to complainant? Most assuredly not. He was right, therefore, in dismissing the bill and remitting the complainant to her proper remedy. The court will bear in mind that the respond-

ent, Ford, bought the negro from Matthews after the bill was written, and injunction granted, but before it was filed. He was admitted a party by consent. It is contended by the complainants, that the bill being taken *pro confesso* v. *McGee & Matthews*, makes it evidence against Ford in spite of his answer. This surely cannot be the law, thus to put one defendant at the mercy of his co-defendants, who may combine with a complainant not to answer. It is well established, that the answer of one defendant cannot be evidence against another—how then can the mere refusal of one to answer? The cases cited to this effect by complainant's counsel have no analogy whatever, and are decisive of a wholly different state of case. One fact stated in the deposition read on trial, shows, conclusively, that in the case as presented, the chancellor could not have done justice by decreeing for complainant—that is, that the complainant has lived with her mother and her present husband for seven or eight years. They would be entitled to remuneration for this, and "*pro tanto*," have an interest in her property. This could not be ascertained or settled without an account in the probate court—the court in which complainant's remedy lies.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The complainant filed her bill as sole distributee of her deceased father, to which one of the defendants demurred. The record shows no disposition of the demurrer, although the case has been argued as though the demurrer was overruled; and probably this was so, but we must be governed by the record. Immediately following the demurrer is an answer; and the record thus presents the defendant as demurring and answering. On this state of case the answer overrules the demurrer, and leaves the defence to rest upon the answer. Depositions were taken, and the defendant set the case down for hearing on bill, answer and proofs, which disclose in substance the following facts, to wit:

Baines, the father of complainant, died intestate, in 1833, leaving a widow and one child, the complainant. Administration was taken, but not long afterwards the administrator died, and

in 1837, administration *de bonis non* was granted to the widow, who afterwards intermarried with the respondent, McGee. It is alledged that Baines left considerable personal property, which came to the hands of the administrators, amongst which was a negro man named Joshua; that, on the 25th of May, 1838, the administrator and administratrix sold this negro at public sale, and that McGee, the administrator, became the purchaser at $1601, which sale was made on a credit of twelve months. McGee afterwards sold the negro to Matthews, another respondent, and Matthews sold to respondent, Ford. The bill alledges that no part of the price has been paid, and that McGee is also largely indebted to complainant, and is insolvent. It seeks to enforce the statutory lien, and it also charges that the purchase was void and did not divest the right. The answer admits most of the allegations of the bill, and states that Baines died possessed of four negroes, one of which complainant has, and that, although the property never was divided, yet that Mrs. McGee was entitled to half the estate, and that, consequently, McGee's sale was valid, he having acquired a right by marriage, and on this ground resists the relief prayed. It is also stated that Matthews paid McGee for the negro. It appears from both bill and answer that the debts of the estate had been paid.

From the proof it appears that Baines left four negroes, one of which the complainant has, and also other personal property. That a witness had paid him $2100, which sum was due to Baines' estate. That the estate was used by McGee and wife, except the negro delivered to complainant. That the estate never was divided, and that the complainant had never received any of it except the negro mentioned. That there was a large amount of unpaid claims against McGee, and that he had sold a large amount of property. On this state of facts the vice-chancellor decreed for the defendants, and dismissed the bill.

The bill, we are constrained to remark, is rather inartificially drawn. The case would have justified a statement much more comprehensive and definite; and, unaided by the answer and proof, it would present a much more doubtful case for relief. But when we look at the whole case as exhibited by the record,

a case for relief is made apparent.   The object of the bill seems to be in the alternative, either to have the sale set aside and the negro declared to be a part of the estate, or to have the statutory lien enforced for the purchase money.

The first question then is, was the estate divested of the right of property by the sale ?   On this question there is scarcely a feature in the case which is not fully covered by the case of *J. & J. Cable* v. *Martin & Bell,* 1 Howard, 558.   It is conceded in argument, that the purchase of property by an administrator, at his own sale, is voidable for purposes of justice.   This admission is certainly not repugnant to law, and goes far enough for the present case.   Whether we would go further, and pronounce such a purchase void, we leave to be determined when it becomes necessary to pronounce an opinion.   Justice certainly requires that the purchase by McGee should be avoided in this case.   It seems to be admitted on all hands, that the estate was out of debt.   The answer is clear on this subject.   He could only sell for the purpose of paying debts, or to enable him to make distribution.   We cannot presume that the sale was necessary for the payment of debts; because there is a direct negative to such necessity.   Nor is there any pretext that the sale was necessary in order to enable him to make a just distribution ; the proof is next to positive that it was not necessary. The estate owned four negroes, and twenty-one hundred dollars in cash, besides perhaps some other property, and it would be worse than rashness to say that this could not have been divided into two shares of equal value.   Besides all this, it is quite apparent, that, if permitted to stand, the sale must work serious injustice to the distributee.   The debts of the estate being paid, the distributee is entitled to her share, and she has not received one-fifth, probably not one-tenth of the whole amount.   And it is made quite apparent that she never can receive her just proportion unless this sale is set aside.   Setting aside this public sale, then, and the right of the respondent, Ford, rests upon the private sale made by McGee to Matthews, which affords no title which can prejudice the distributee.   It is, then, like the case of *Cable* v. *Martin & Bell,* which was a private sale of negroes by

an administrator, who had married the widow and was entitled to her portion of the estate; but the right of the purchaser was held to yield to the right of the distributees, on a bill in chancery to set aside the sale. In that case it was held that the husband, having acquired the wife's right by marriage, his vendee would be protected to the extent of that right, but not beyond it. And it was also held, that the court of chancery had jurisdiction for the purpose of ascertaining and adjusting the respective rights of the parties. So in this instance, if the share of the distributee remains untouched, then the respondent will be protected. But her right is paramount to his, and if, on taking an account of the estate and profits, it should turn out that there is not enough to make out her distributive share, without the negro Joshua, then the respondent's right must yield to her superior claim. Ford does not even pretend to be a purchaser without notice; so that if ignorance of the complainant's rights would have saved him, he is still without excuse. The rights of the parties standing on this footing, it is plain that there is no adequate relief in the probate court. If the administrator were the only party it would be otherwise. Nor is there an adequate remedy in the circuit court. The administrator might maintain an action for property belonging to the estate, but in this instance he stands charged with a fraudulent disposition of the property to the other respondents. In order to get at the merits, it is necessary that he should be a defendant. It is no answer, either, to say that the distributee has a remedy on the bond. An illegal disposition of property by an administrator, is no disposition at all, and a court of chancery will not permit an estate to be squandered, and turn the distributee over to his remedy on the bond. Mal-administration is not merged in the bond; it affords a mere collateral remedy.

If we regard the public sale as valid, it does not change the result. The mortgage given by statute is intended for the benefit of the estate, not for the benefit of the administrator. When the administrator became the purchaser, the mortgage operated to secure the purchase money from him to the estate, for the use of those interested. He then occupied the place of mortgagor.

He is usually the trustee for creditors and distributees, and when he places himself in a condition to defeat the trust, the *cestui qui* trust is entitled to his remedy to coerce it. If, then, the administrator purchased by a valid sale, the law created the mortgage for the purchase money; for it is express that the property shall remain liable for the purchase money; and it remained liable in the hands of all purchasers under McGee. When Matthews purchased of McGee, his payment of the purchase money to McGee was not necessarily a discharge of the mortgage, for this was a mere individual transaction; payment to the estate was the only thing that could have discharged the mortgage.

As the defendant's counsel seem to think they are entitled to the benefit of the demurrer, we will say a few words on that subject, although it is not fairly presented by the record. This is not unlike the case of *Murphy* v. *Clark*,* decided at the present term. The bill was framed, as it is in this instance, with a twofold aspect, either a specific delivery of the property, or an enforcement of the lien; and it was held that the demurrer was properly overruled, although in that instance the administrator was complainant. The bill contains a prayer for an account, and for general relief. The stating part of the bill contains only legitimate subjects for the interposition of a court of chancery, and the prayer for an account, must be construed to extend only to the subject matter of the bill. Its language does not go beyond what may be properly decreed.

The decree must be reversed, and the cause remanded for such interlocutory order as may be necessary.

* Vide, infra, page 221, *Murphy* v. *Clark*, cited by the court.